[Civ. No. 3042.   Fourth Dist.   Mar. 16, 1943.]

HERMAN D. STEELE, Respondent, v. ROBERT WARD-WELL et al., Appellants.

Arthur C. Fisher for Appellants.

Harvey, Johnston & Baker for Respondent.

BARNARD, P. J.—This is an action for damages for injuries sustained by the plaintiff on March 17, 1941. The plaintiff had been hired by the defendant Robert Wardwell as a farm laborer. He was in charge of a rotary tiller which was pulled by a tractor operated by his brother Tom Steele. The working part of the tiller consisted of a cylinder on which were some fifty blades about seven inches long. When in operation the cylinder revolved rapidly and the blades cut into the ground. There was a flap or guard at the rear of the tiller, made of heavy boards, which could be raised or lowered. There was a connection between the tiller and the tractor which is called a power take-off, with a separate gear and lever so the cylinder on the tiller could be operated by the engine of the tractor whether or not the entire outfit was moving over the ground.

On this occasion Robert Wardwell, with two other men, approached the outfit as it was being operated in the field. The plaintiff's brother stopped the tractor and, leaving the engine running, moved the lever on the power take-off so the cylinder on the tiller ceased to revolve. He turned sideways in his seat on the tractor and began to smoke. The plaintiff went to the rear of the tiller, the flap or guard of which was up, and getting down on his knees he reached under the cylinder of the tiller and attempted to pull out some wire which was caught there. As he was doing this the power take-off became engaged, the cylinder of the tiller suddenly began to revolve, and the blades caught the plaintiff's arm causing the injuries in question.

The complaint in this action named as defendants Robert Wardwell and his wife, J. H. Maurer and his wife, three fictitious defendants, and also all of these defendants as "copartners doing business under the firm name and style of Brown Copartnership." Paragraph I of the complaint alleged that the four named defendants and the three fictitious defendants "at all times herein appearing" were and are

"copartners doing business under the firm name and style of Brown Copartnership," that the Wardwells were husband and wife, and that the Maurers were husband and wife. Paragraph II alleged that the three fictitious defendants and Brown Copartnership were sued under fictitious names as the plaintiff was ignorant of their true names but that when he ascertained the true names he would move to amend his complaint accordingly. Paragraph III alleged that on March 17, 1941, the plaintiff was employed by the defendants as a laborer upon the premises occupied and operated by the defendants and each of them. Paragraph IV alleged that on March 17, 1941, while plaintiff was so employed on said premises, and in the course of his employment by, and while acting under the direction and control of, the defendants and each of them, the defendants and each of them without warning to the plaintiff, carelessly and negligently provided, without reasonable safeguards to permit the plaintiff to work in reasonable safety, a rotary tiller and tractor which the defendants knew, or in the exercsie of ordinary care should have known, was dangerous to the plaintiff, with the result that the plaintiff was injured.

The defendant Robert Wardwell answered and the defendants Jean Wardwell, J. H. Maurer and Mrs. J. H. Maurer filed a separate answer. Neither of these answers mentioned paragraph I of the complaint or in terms denied its allegations. Robert Wardwell's answer contained a paragraph which reads: "Admits that on March 17, 1941, plaintiff was employed by this answering defendant, but denies that any of the other defendants, or any other person except this answering defendant, was the employer of said plaintiff." The answer filed by the other three named defendants contained the following: "Deny, insofar as said allegations refer to or relate to these answering defendants, each and every allegation in Paragraphs III, IV, V and VI of the complaint filed herein, and particularly deny that on the 17th day of March, 1941, at the time the alleged accident occurred, plaintiff was employed by these answering defendants or any or either of them."

When the plaintiff rested the three named defendants who thus separately answered moved for a nonsuit as to them on the ground that no evidence had been introduced to substantiate the allegations of the complaint as to any defendant except Robert Wardwell. Counsel for plaintiff opposed this

motion on the ground that these defendants had admitted the existence of the partnership by failing to deny specifically the allegations of paragraph I of the complaint. These defendants then asked leave of court to amend their answer, in furtherance of justice and for the purpose of setting forth the true facts, by denying the existence of any partnership relation between them and Robert Wardwell at the time in question. The court refused permission to amend and denied the motion for a nonsuit. Counsel for these defendants then offered to prove that no partnership relation existed between Robert Wardwell and any of these three defendants, that none of them had any connection with the operations of Robert Wardwell on the premises where this accident occurred, that they had no interest in such operations or the proceeds thereof, and that they did not in any manner employ or authorize the employment of the plaintiff. They not only offered to prove these things but they called witnesses to the stand and attempted to bring out evidence to this effect. Objections to the offers of proof and to the introduction of such testimony were sustained on the ground that this matter was not relevant to any issue in the case since the partnership relation had been admitted by failing to deny paragraph I of the complaint.

At the conclusion of the evidence these three named defendants again moved for a nonsuit as to them on the ground that there had been no evidence to in any manner connect them with the employment of the plaintiff or his alleged injury, and on the further ground that the plaintiff had alleged that ''Brown Copartnership'' was a fictitious name, that he would amend the complaint by inserting the true names when the same were ascertained, and that no request for such an amendment had been made. Counsel for the plaintiff then asked leave to amend his complaint so as to show the true name of the partnership but withdrew that motion when it was suggested that this might give an opportunity to anyone thus named to appear and defend. The motion for nonsuit was again denied, as was also a motion for an instructed verdict with respect to the three defendants who had separately answered. In his instructions, the court instructed the jury that the allegations of paragraph I of the complaint had not been denied and it must therefore take these as true ''for the purposes of this action''; that it must take as true the

fact that Robert Wardwell, Jean Wardwell, J. H. Maurer and Mrs. J. H. Maurer were and are "during all the times and all the transactions involved in this case, copartners doing business under the firm name and style of Brown Copartnership"; that the plaintiff was claiming liability against these four persons "as copartners and not otherwise"; that "it is admitted that these persons are copartners and constitute a copartnership"; that "the court therefore instructs you that the copartnership owed a duty to provide a safe place and appliance for the benefit of any servant"; and that if the servant was injured through the negligence of any copartner in the active management of any copartnership business the partners "are each and all liable" for any such negligence if it proximately caused any injury. The jury returned a verdict in favor of the plaintiff and separate appeals have been taken by Robert Wardwell and the other three named defendants.

■ With respect to the appeal of the three named defendants other than Robert Wardwell, it seems obvious that the judgment must be reversed. Their appeal is largely predicated on the fact that a verdict was rendered against them because of the rulings of the court and its instructions to the jury to the effect that their answer admitted the existence of a copartnership with the defendant Robert Wardwell, and that by reason of this admission they were liable for any injury sustained by the plaintiff during the course of his employment by Wardwell and resulting from the negligence of Wardwell. It may first be observed that while paragraph I of the complaint alleged that these three defendants with Robert Wardwell and three fictitious defendants were copartners doing business under the firm name and style of "Brown Copartnership," it was not there alleged that these persons or that copartnership had anything to do with the operations out of which this action arose. In opposing the motion for a nonsuit made by these three appellants and their subsequent attempts to amend their answer and to introduce evidence to support their contention that they had no partnership relation with Robert Wardwell, the respondent was compelled to and did couple the allegations of paragraph I of the complaint with the other allegations contained in paragraphs III and IV thereof, to the effect that he was employed by the four named defendants and each of them on premises operated by all of them, and that he was furnished an unsafe

appliance by the four named defendants and each of them. However, in its instructions, the court enlarged the scope of paragraph I of the complaint and, in effect, instructed the jury that since that paragraph had not been denied it must take as true not only the fact that the four named defendants were copartners during all the times involved in this case, but also the fact that they were acting as copartners during "all the transactions involved in this case." Under the circumstances which here appear, we think it was an abuse of discretion to refuse to permit these three appellants to amend their answer in this regard, to the end that the true facts might be ascertained.

In any event, the court erred in its repeated rulings by which it refused to permit these three appellants to introduce evidence for the purpose of disproving the existence of a partnership relation between them and the appellant Robert Wardwell. As we have pointed out, the allegation in paragraph I of the complaint, that the four named defendants with the fictitious defendants were and are copartners, is immaterial in this action unless it is considered and taken in connection with the allegations of paragraphs III and IV in which, for the first time, it is attempted to connect these defendants with the ranch operations out of which this action arose. These three appellants not only denied each and every allegation in paragraphs III and IV of the complaint, but they particularly denied that at the time in question the respondent was employed by them or by any or either of them. While this answer may not be a model it specifically denied the allegations of the complaint which were essential to connect these appellants with the accident in question, it followed substantially the form in which the relation between any copartnership and the injuries to the plaintiff were alleged in the complaint, and these denials were broad enough to cover any employment of the respondent by these appellants whether that employment was direct, by an agent or through a partnership relation. The respondent seems to contend that the denial of these three appellants, to which we have referred, was of no effect in this regard because that answer was filed by them as individuals and not for them as members of a copartnership, it being argued that it follows that they were not entitled to attack the existence of a copartnership since they appeared as individuals and not as

members of the partnership. The action was not against a copartnership as a separate entity but as against these individuals and their liability, if any, is an individual liability whether or not it arises from a partnership relation. (*Ferry v. North Pacific Stages,* 112 Cal.App. 348 [296 P. 679]; *Billings* v. *Finn,* 35 Cal.App. 134 [202 P. 938]; *Maclay Co.* v. *Meads,* 14 Cal.App. 363, 370 [112 P. 195, 113 P. 364].) An issue was clearly presented as to whether these three appellants had in any way employed the respondent and the issue was sufficiently presented as to whether they had employed him through the act of one of their copartners. The court erred in entirely taking that issue away from the jury. There is no merit in appellant Robert Wardwell's contention that the court erred in refusing to give five instructions requested by him. The substance of the matter thus requested was sufficiently covered in other instructions which were given.

■ The important question presented in connection with the appeal of this appellant is in regard to the effect of certain comment and statements made by the trial court while evidence was being received. The entire case of the respondent was based upon the theory that he had been furnished equipment with which to work which was in an unsafe and dangerous condition. While there was some contention that negligence existed in that this appellant had raised the flap or guard at the rear of the tiller and had directed the respondent to work with the flap thus raised, a matter with respect to which the evidence is in conflict, the respondent's case was mainly predicated upon the theory that the arrangement on the tractor for putting the power take-off into gear was so worn or defective that the touching or manipulation of the tiller teeth by the respondent, in his effort to remove the wire, threw the mechanism into gear and started the cylinder and teeth on the tiller to revolving. The respondent's brother, who was operating the tractor itself, testified that when he stopped the tractor on this occasion he threw the power take-off out of gear, that he did not put it into gear again, and that he did not touch or kick the gear mechanism. The other witnesses testified that they did not see anyone put the power take-off into gear. The undisputed evidence is that the tractor was purchased in January, 1941, and the rotary tiller in March, 1941.

There is no direct evidence of any defect in the tractor except that it was hard to put in gear. The respondent testi-

fied that on the day preceding the accident Robert Wardwell had put the guard or flap up and told him to leave it that way, which he did; that on that occasion, while the tractor was stopped with its engine running but with the power take-off out of gear so that the tiller teeth were not revolving, Robert Wardwell had pulled some wire from the tiller cylinder in a manner similar to that employed by the respondent on the next day, and had directed the respondent to keep such wires out of the machine. He also testified that a day or two before the accident occurred he heard a conversation between his brother Tom and Robert Wardwell in which Tom told Robert that he could hardly get the tractor in gear, that sometimes he had to kick the lever in order to get the power take-off in gear, and that Robert Wardwell replied: "He would see about that, he didn't think the tractor is what it should be anyway." He further testified that he had observed that in the operation of the gears of the tractor it was difficult sometimes to operate, that he had himself operated the tractor on the day before the accident and found that it was hard to put the power take-off into gear, that it "took a little effort to put it in gear" but that "it wasn't hard to take out of gear." Tom Steele testified that on the day before the accident he told Robert Wardwell that the gears were in bad shape, that it took some time to get it in and out of gear and Wardwell said that "He knew, he didn't think the tractor was much good." Several witnesses testified that this outfit was in good condition. There was no other direct evidence as to its actual condition.

In an effort to prove that the accident had not happened because of any defect or dangerous condition in the machine the appellants put on two expert witnesses, and it is in connection with their testimony that the remarks of the court which are claimed to be prejudicial were made. One of these witnesses after testifying that he was familiar with this tractor, was asked "if it would be possible when the clutch is disengaged and the power take-off is out of gear to cause the power take-off to become effective and start the revolving of those teeth by any manipulation of the teeth themselves?" He replied, in effect, that it would be impossible to do so, giving his reasons. Respondent's counsel moved to strike out this answer on the ground that the question had included nothing as to the condition of the mechanism and that if the

mechanism were in bad shape the answer might be different. The court then asked the witness: "Your answer, Mr. Hitchcock, is based upon the supposition that all the machinery is in good repair and working order?" The witness replied: "Yes, sir," and the court remarked: "That is fine." The other expert witness, after testifying that he was familiar with tractors of this kind having devoted his efforts chiefly to them for six years, was asked a similar question as to whether it would be possible to throw the machinery into gear by manipulating the teeth or moving the cylinder on the tiller while the clutch was disengaged and the power take-off out of gear on the tractor. Respondent's counsel made the same objection as before and the court remarked: "Yes, I feel that I know something of my own knowledge about this and that is why I am getting particular, because no man can testify what will happen to machinery in case a certain thing happens unless he knows the condition of that machinery and the condition of this machinery is not stated, and also machinery might be in such awfully bad shape that a jar might throw it into gear." The appellants' counsel suggested that the question was "if it were out of gear." The court replied: "All right, I know enough about machinery that it might be so badly worn and damaged and one thing and another that a jar might throw it into gear, at least I think I do." Appellants' counsel then asked the witness: "Regardless of the condition of the tractor we have here, would it be possible by manipulating the teeth of this tiller or any similar device to start the power take-off mechanism of the tractor in operation if the clutch were out and the power take-off lever were out of gear," to which the witness replied: "It would be impossible." When asked to explain the reason why it would be impossible respondent's counsel objected and the court said: "Let him explain if he can, I am interested." Thereafter, the witness was permitted to explain why he thought it was impossible to put the machinery in gear by manipulating the cylinder on the tiller. Later, on cross-examination, this witness was asked by respondent's counsel: "You do recognize this, do you not, that with respect to any old mechanism, sometimes they get in such a condition that a slight jar will cause the gears to engage?" The witness replied: "It depends on the circumstances under which that slight jar happens." In one of his instructions the court told the jury that there had been uncontradicted testimony of

expert witnesses "to the effect that the power takeoff from the tractor to the tiller could not possibly have been engaged and put in operation by any action in connection with the tiller or the teeth on the tiller." He then told the jury that an expert witness may give his opinion as to any material matter in which he is versed but that "you should carefully consider such expert information and should weigh the reasons, if any, given for it."

There was no direct testimony as to how the gears on this machinery became engaged so as to cause the cylinder and teeth on the tiller to revolve. It seems quite clear that the respondent was relying upon an inference which might be drawn from the established fact that the gears did become engaged, to the effect that there was some defective and dangerous condition in the machinery which made it possible for this to occur. The appellants were attempting, through expert witnesses, to show that this was not possible. The respondent made no attempt to combat that theory by the testimony of other expert witnesses but relied entirely on cross-examination of the appellants' witnesses. It was in that situation that the remarks of the court which are here complained of were made. These remarks were not merely comments upon the evidence which had been received but the court went farther and, after an implied criticism of the knowledge of the witness who had testified, stated that he knew something of his own knowledge about this situation and that he knew enough about machinery to know that a number of things, including the fact that it was badly worn, might cause a jar to throw it into gear. Not only would such statements coming from the trial judge probably have a great influence upon the jury (See *Anderson* v. *Mothershead,* 19 Cal.App.2d 97 [64 P.2d 995] ), but in practical effect the trial judge testified on this point, as well as clearly intimating to the jury that he did not consider the testimony given by the experts as entitled to much weight. While his later instructions on this subject were correct, strictly speaking, they were so worded as to rather emphasize the opinion he had previously expressed. There was no testimony from any other witnesses along the line of the matter volunteered by the trial judge and his statements were of such a nature that it hardly seems possible that they were not prejudicial, or that their effect could have been cured by the general instruction which the court later gave that "You are not to infer from any statement or act of mine, or from

any of the instructions given you, that the court has any opinion as to what verdict should be rendered herein.'' This was a close case and the statements made by the court may well have been the determining factor. In our opinion, the entire case should be reversed to the end that all of the issues should be fully and fairly tried.

The judgment as against all four appellants is reversed, with instructions to permit the appellants, other than Robert Wardwell, to amend their answer by denying the existence of such a partnership, should they so desire.

Marks, J., and Griffin, J., concurred.