[Civ. No. 15176. Second Dist., Div. One. Aug. 12, 1946.]

PHILALETHA MARTIN, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Appellants.

Frank Karr, C. W. Cornell, O. O. Collins and Malcolm Archbald for Appellants.

Marion P. Betty for Respondent.

DORAN, J.—The plaintiff and respondent brought this action to recover damages for personal injuries sustained while riding as a passenger for hire in defendants' motor coach. The accident and resulting injuries were caused by a collision between the motor coach and a private automobile operated by the defendant Bernard Unrath. The collision occurred about 7:15 p. m., February 13, 1943, on Wilshire Boulevard between Almont Drive and La Peer Drive in Beverly Hills. The complaint charged negligence in general terms as to all defendants; the answers of the Los Angeles Railway Corporation and its driver H. R. Harrington, denied negligence and as an affirmative defense charged that the accident was caused solely by the negligence of the defendant Unrath. At the trial, held before a jury, plaintiff dismissed as to the defendant Unrath, and a verdict for $10,000 was returned against the railway company and its driver.

The accounts of how the collision happened, as given by the defendant Unrath who was driving a Chevrolet coupe, and the defendant Harrington, the driver of the motor coach or bus, were at material variance. Both vehicles were being driven easterly on Wilshire Boulevard near the south curb, at a speed of about 25 miles per hour. Unrath's testimony indicated that the Chevrolet was "sideswiped" by the bus as Unrath attempted to pull in to the curb for the purpose of picking up a sailor. At the impact of the two vehicles, the bus went over the curb and into a lamp post, plaintiff being "catapulted through the air and struck the rear of the (bus) seat in front of me with my head," resulting in injuries to plaintiff's face, neck, shoulders, legs and body. Unrath testified to first seeing the bus through the rear-view mirror, about 200 feet behind; that "We traveled right on down there together, so to speak. . . . He (the bus driver) was to my right hand and rear." Unrath's further testimony was to the effect that the bus driver did not sound a warning,

and that the bus struck Unrath's car on the right rear fender and running board. On the other hand, Howard Harrington, the bus driver, testified that Unrath's automobile, when first seen, was behind the bus, "about 5 feet to the left of the motor coach (bus). As I was driving along, the car pulled up, and as he gained his front wheels got alongside of the coach, and we drove that way for 25, 30 or maybe 40 feet. He suddenly pulled ahead at least seven to ten feet on the left side of my coach. . . . He made a sudden swerve to the right, applied his brakes, I sounded my horn, applied my brakes; I pulled over a little to keep from hitting him. The bus, left front of the bus, came in contact with his right rear fender, pushed the bus up against the curb." At the time of the collision the bus was loaded with about 60 passengers including the plaintiff.

On October 19, 1944, at 2 p. m. after all of the evidence on the question of liability and practically all of the medical testimony had been received, plaintiff's attorney, in the presence of the jury, made the following motion for dismissal as to the defendant Unrath, which motion and the court's ruling thereon, is assigned as prejudicial error:

"Mr. Betty: At this time, Your Honor, I would like to move for a dismissal of the plaintiff's cause of action against the defendant, Unrath, upon the ground that the evidence does not show any liability.

"The Court: Any objection on the part of the defendant, Unrath?

"Mr. Ryan: No, Your Honor.

"The Court: Well, the case is dismissed as to the defendant, Unrath, only."

On the morning of October 20, 1944, Mr. Collins, attorney for the Los Angeles Railway Corporation, in chambers, moved for a mistrial "upon the ground of misconduct on the part of the plaintiff and upon the further ground that the granting of the motion and the motion itself prejudiced the jury—or at least took away from the jury a defense which was properly plead, which was an issue in the case; and that the evidence is such that the court could not say, as a matter of law, Mr. Unrath was not guilty of negligence and the sole negligence which caused the accident." Mr. Collins further stated that "Your Honor knows I have been somewhat hard of hearing during this week and I didn't hear the entire motion yesterday. . . . I was sorry I did not hear it or I would have

protested at that time." After denial of this motion for a mistrial, Mr. Collins then moved the court "to instruct the jury they should disregard that portion of the motion, that there is no liability on the part of the defendant Unrath; further that the court instruct the jury that the court did not pass upon that question, whether or not the defendant, Unrath, was guilty of negligence, jointly or severally, or whether the negligence on the part of Unrath was the sole cause of the accident." Plaintiff's counsel then stated: "I have no objection to Your Honor making an instruction to the effect that the motion was granted, because the plaintiff has a right to dismiss as to any codefendant, and that the court did not pass upon any question of negligence of the defendant, Unrath, and that they are not to place any reliance upon granting the motion." Thereafter, the trial court instructed the jury on this subject as follows: "You are instructed that the court in granting plaintiff's motion for a dismissal as to the defendant Unrath, did not pass upon or intend to infer that the defendant Unrath was not guilty of negligence at the time of the accident, or that if he was guilty of negligence, that his negligence was not the sole proximate cause of the accident."

■ The contention that "The manner in which the case was dismissed as to the defendant Unrath resulted in prejudicial error as to appellants," cannot be sustained. Under the provisions of section 581 of the Code of Civil Procedure the plaintiff had a right to dismiss the action against one or more defendants, and an action may likewise be dismissed "4. By the court, when upon the trial and before the final submission of the case, the plaintiff abandons it." Perhaps nothing is more common than for a plaintiff to join various defendants in a complaint, and later, at the trial, to dismiss as to one or more defendants depending upon the state of the evidence. In the present case the record discloses nothing more than this. While it is quite true, as commented upon in appellant's brief, that the plaintiff could have dismissed the action as to Unrath in other ways than by making such motion in open court before the jury, there is nothing, other than appellants' unsupported statement, to show bad faith on the part of plaintiff's counsel, or that the procedure adopted actually resulted in any prejudice to appellants. At the time the motion was made, practically all of the evidence in the case had been presented. Thereafter, only a few ques-

tions were propounded to a medical witness before the evidence was closed. Certainly the plaintiff's attorney would have been entitled to argue to the jury that the evidence indicated that the bus driver's negligence was the sole proximate cause of the accident. The appellants were in no manner prevented from presenting any defense within the issues. Neither the attorney's motion for dismissal against the defendant Unrath "upon the ground that the evidence does not show any liability," nor the trial court's order, "Well, the case is dismissed as to the defendant, Unrath, only," were calculated to prejudice the jury. Moreover, a proper instruction on the subject was given by the trial court.

No case has been cited by appellants holding that the procedure adopted in the instant case was either improper or prejudicial. The case of *Nicholas* v. *Crossetti*, 16 Cal.App. 2d 376 [60 P.2d 335] was an action for assault in which the trial court advised the jury that it had granted a nonsuit in favor of defendant's father on the ground that there was no evidence that the father had participated in or authorized the son's action. In overruling another objection the court said: " 'There won't be anything to it after it is submitted to the jury.' " Finally, in overruling an objection to hearsay evidence the court stated: " 'Overruled. There is testimony before the jury here that this defendant was leading the mob.' " In this state of the record the judgment was reversed on the ground that the defendant had not been accorded a fair trial. The Nicholas case bears no resemblance to the present situation and is not authority for appellants' contention. Appellants also rely on *Abbott* v. *Limited Mutual Compensation Ins. Co.*, 30 Cal.App.2d 157, 161 [85 P.2d 961] where the court said: "In an action on a contract, when it appears from the pleadings or the evidence that any defendant is not liable or necessary to a determination of the controversy, he may be dismissed from the action, provided a remaining defendant is not thereby prejudiced." As hereinbefore indicated, in the instant case there is no reason to believe that the remaining defendants were or could have been prejudiced by the dismissal in question. In *Steele* v. *Wardwell*, 57 Cal.App.2d 642 [135 P.2d 628] a reversal was ordered because of certain remarks of the trial court by way of implied criticism of expert witnesses, where the case was close "and the statements made by the court may well have been the determining factor." Again, the situation in the

Steele case was in nowise comparable to that now under consideration.

 Appellants' second contention is that "The court committed prejudicial error in refusing to permit the defendant railways to impeach and cross-examine the witness W. L. Ritchey." This witness, a police officer, had first been called by the plaintiff, and as stated in appellant's brief, "Thereafter, the witness Ritchey was recalled to the stand by the defendant railways." The officer testified that both the bus driver and Unrath, the automobile driver, had stated how the accident happened, and that the witness thereafter made a police report detailing the facts "according to both drivers involved, and disinterested witnesses present at the scene of the accident." After the witness had been recalled by appellants the question was asked, "At that time did Mr. Harrington, in substance, Mr. Unrath, in substance, say to you that he was driving east . . ., that he speeded up his vehicle until the rear wheels were barely inches ahead of the motor coach and then executed a right turn?" Although this question, as commented upon by the witness, "was rather composite like," and indeed, confusing, it was finally answered in the negative. The appellants' attorney then sought "to use the paper (police report) for the purpose of impeaching the officer. I have been taken by surprise, after reading the document which was given me, that his answer was no, in view of the signed written statement of the officer to the contrary." The trial court refused to permit the use of the police report other than for the purpose of refreshing recollection, of which action the appellants complain. Appellants' brief concedes that permission to impeach or cross-examine one's own witness is a matter largely within the sound discretion of the trial court but argues that there has been an abuse of such discretion.

Section 2049 of the Code of Civil Procedure provides that a party's own witness may be impeached by a showing "that he has made at other times statements inconsistent with his present testimony." Such impeachment, however, is limited to those cases where the witness gives adverse testimony and where counsel is taken by surprise, and not in cases where the witness merely fails to testify as expected. (*People* v. *Creeks,* 141 Cal. 529 [75 P. 101]; *People* v. *Flores,* 37 Cal. App.2d 282 [99 P.2d 326].) Obviously, appellants' assertion that the witness's statement constituted "surprise," does not

make it so, and at most, the case seems to be merely one of those in which the witness failed to testify as favorably as counsel expected or hoped would be the case. Moreover, there is no direct contradiction or inconsistency in the officer's testimony that Unrath did not say "that he speeded up his vehicle until the rear wheels were barely inches ahead of the motor coach and then executed a right turn," and the police report which did not contain such a statement by the officer but merely purported to be a composite version "according to both drivers involved and disinterested witnesses," etc. In the court's ruling prohibiting the use of the police report for impeachment purposes, there appears to have been no abuse of discretion of which appellants can complain.

■ Lastly, appellants complain that "The court erred as a matter of law in limiting defendants' cross-examination of plaintiff's witness, Ruth Mullen." This witness was a passenger on the defendants' bus and had testified both as to the facts of the accident and also as to a written statement made at defendants' request. Respondent's brief calls attention to the fact that the appellants' so-called "curtailed cross-examination" and recross examination occupied some twelve pages of the Settled Statement on Appeal, and that during the course of cross-examination only four objections thereto were sustained by the trial court. While the length of cross-examination in pages or otherwise is obviously not decisive, an examination of the record in this case fails to disclose any undue limitation of defendants' cross-examination. The record further reveals that at the end of the cross-examination, Mr. Collins, appellants' attorney, stated, "That is all," without in any manner indicating a belief that the right of cross-examination had been unduly curtailed or interfered with. It is true that the right of cross-examination is a most valuable one and, as appellant says, one of the "virtues of our system of legal justice that have grown up through the years." The right, however, is not unlimited, and like other details of a trial is subject to proper and reasonable control at the hands of the trial court.

The judgment is affirmed.

York, P. J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 10, 1946. Shenk, J., and Schauer, J., voted for a hearing.