[Civ. No. 15739. First Dist., Div. Two. Mar. 24, 1954.]

NETTIE FAYE CROOKS et al., Plaintiffs and Respondents, v. GLENS FALLS INDEMNITY COMPANY (a Corporation), Appellant; NORA A. CROOKS, as Administratrix, etc., Defendant and Respondent.

Barfield & Barfield for Appellant.

Miller, Kroloff & Brown, Jack J. Miller and Cyril Viadro for Respondents.

KAUFMAN, J.—This is an appeal by defendant Glens Falls Indemnity Company, from a judgment for $50,513.20 plus interest upon a jury verdict in favor of plaintiffs.

A judgment had been previously recovered in the Superior Court of Solano County by plaintiffs, Nettie Faye Crooks, the widow of Earl Crooks individually and as guardian ad litem of her two minor children, against the estate of Carol Wayne Crooks in an action for Earl's wrongful death.

Earl and Carol Crooks were brothers. On the night of November 15, 1949, they were both killed when the cattle truck and trailer which Carol was driving and in which Earl was riding collided with a railroad train. The truck was owned by Arthur J. Brown and Freda L. Brown and was covered by a comprehensive general automobile liability insurance policy issued by defendant, Glens Falls Indemnity Company.

Appellant admits that the important issue at the trial was the status of Earl Crooks at the time of the accident, for if he was an employee of Brown and acting within the scope of his

employment his heirs are limited to their remedy under the workmen's compensation laws. Plaintiffs contended that the Crooks brothers were engaged in a joint venture with Brown hence Carol Crooks was an "insured" within the meaning of the Insuring Agreements of the policy, and his liability to Earl was covered thereunder.

·Arthur J. Brown, appellant's insured, was operating a business at Dixon, California, the Dixon Livestock Auction Company. In connection with the phase of his business concerned with livestock hauling, he operated as a highway carrier under a permit issued to him by the Public Utilities Commission. He owned several livestock trucks. When Brown's employees operated cattle trucks they were paid wages on an hourly basis. However, when Earl and Carol Crooks operated a cattle truck they split the profits derived from the operation of the truck on a two-thirds, one-third basis. No deduction was made from their share for unemployment insurance or social security. Brown testified that although the audit for workmen's com-· pensation was not yet due at the time of the accident, he did not intend to report Earl and Carol as his employees under this hauling arrangement. Occasionally Earl and Carol worked in Brown's livestock yard, and on these occasions they were paid wages computed on a daily or hourly basis from which deductions were made for unemployment insurance and social security. These daily wages, Brown testified, he intended to report to the State Compensation Insurance Fund at the time of the audit.

Brown testified as to the arrangement between himself and the Crooks brothers as follows: "Well, we simply operated the trucks; I put up the trucks and the necessary money to run the trucks, and they furnished the necessary labor to keep the trucks in operation." The business could be procured by either Brown or the brothers. They received one-third and Brown two-thirds of the profit. They received their share every month. Brown stated that he considered his arrangement with the Crooks brothers to have been a joint venture. Brown notified Earl and Carol where to pick up loads and where to deliver them and warned them of any difficulties the job might involve, but gave them no further instructions, such as what route to travel as they were experienced cattle haulers. Their driving ability was one of the factors that induced Brown to enter into this arrangement with them.

Appellant contends that the evidence as a matter of law establishes that at the time of the accident Earl Crooks was

an employee of Brown engaged in the course of his employment, and that coverage under the policy is therefore excluded. Appellant cites several authorities to the effect that the question of whether a person is an employee or an independent contractor is one of law for the court if but one inference can be drawn from the evidence. (*Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9]; *Baugh* v. *Rogers*, 24 Cal.2d 200, 206 [148 P.2d 633, 152 A.L.R. 1043]; *Perguica* v. *Industrial Acc. Com.*, 29 Cal.2d 857, 859 [179 P.2d 812]; *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 39 [180 P.2d 11]; *National Auto etc. Co.* v. *Industrial Acc. Com.*, 80 Cal.App.2d 769, 772 [182 P.2d 634].) Appellant says that it appears without dispute that Earl Crooks was performing work for Brown at the time. While it is true that Brown had notified the Crooks brothers where this load of cattle was to be picked up and where it was to be taken, Brown testified that the choice of the route was theirs, that he didn't control the transportation, that they were experienced cattle haulers, that he believed their relationship was a joint venture. They were free to solicit business, use Brown's equipment for transporting, and presumably the profits would be divided on the same basis. Photostatic copies of the checks made out to the Crooks brothers for their share of the hauling transactions were in evidence, and showed no deductions for social security or withholding tax, whereas other checks written to the Crooks brothers, individually for labor in the yard showed such deductions. There would appear to have been ample evidence from which the jury could have inferred that as to the cattle hauling arrangement, the Crooks brothers were not employees. That was all plaintiffs had to prove. If they were either joint venturers with Brown or independent contractors, there was coverage under the policy. (Plaintiffs' Ex. A, Insuring Agreements I, "Exclusions".)

Appellant relies particularly on *Burlingham* v. *Gray, supra,* and *Baugh* v. *Rogers, supra.* In the first case it was pointed out that whether a person's status is that of employee or independent contractor is governed by the right of control which rests in the employer, rather than by his actual exercise of control. A person can still be an employee and have a certain amount of freedom in the carrying out of his duties because of the very nature of the work. The real tests were said to be whether if orders were given they would have to be obeyed and the right of the employer to end the service whenever he sees fit. Appellant has noted that Brown said he expected his

orders or directions to Earl or Carol Crooks to be carried out and that he could cancel the arrangement with them at any time. Appellant calls attention to the fact that Brown made the usual "Employer's Report of Industrial Injury" to his compensation carrier, and referred therein to Earl as his employee (Defendant's Ex. C). Plaintiffs herein also filed with the Industrial Accident Commission their "Application for Adjustment of Claim," reciting that Earl was employed by Brown at the time he was killed, and that his death arose out of and in the course of his employment. (Defendant's Ex. A.)

The testimony reviewed by appellant establishes that there is a conflict in the evidence but does not demonstrate that the evidence is subject to but one inference as a matter of law. In *Burlingham* v. *Gray*, cited by appellant, a directed verdict was reversed, the court holding that the question of the relationship of the parties therein was a question of fact for the jury. And in *Baugh* v. *Rogers, supra*, it was said that "a material and generally conclusive factor is the right of the employer to exercise complete and authoritative control of the manner in which the work was done." Brown testified herein that he exercised no control over the manner in which the Crooks brothers did this work, he simply notified them where the loads were to be picked up and the destinations thereof. An attorney with the State Compensation Fund who represented said Fund and Mr. Brown before the Industrial Accident Commission, testified that after investigation by their field adjusters, it was their opinion that there was no employment and that the claim would be denied. After hearing, the matter was taken off calendar or the submission held in abeyance.

Appellant maintains that a fair trial was denied to it by the prejudicial acts and conduct of the trial judge. Four excerpts from the transcript are set forth in the briefs as demonstrating the prejudicial manner in which the trial was conducted. In two instances the trial judge repeated testimony of the witness Brown which dealt with the lack of the employment relationship and the existence of a joint venture. While this might be considered as unduly emphasizing such testimony, there is nothing to indicate that the trial judge believed such testimony to be true. None of the incidents now complained of were objected to by appellant at the trial, no assignment of misconduct was made and there was no request that the jury be instructed to disregard them. Appellant, therefore, must be deemed to have waived objection to these

remarks. (*Rednall* v. *Thompson*, 108 Cal.App.2d 662, 665 [239 P.2d 693] ; *Germ* v. *City & County of San Francisco*, 99 Cal.App.2d 404, 415-416 [222 P.2d 122].) It is true as appellant says that cautionary instructions to the jury not to infer that the court has an opinion as to what the verdict should be do not cure the prejudicial effect of partisan comments or remarks by the court (*Steele* v. *Wardwell*, 57 Cal.App.2d 642, 651-652 [135 P.2d 628] ), but excerpts from the transcript set forth herein by appellant do not appear to contain such partisan comment. The remarks herein did not cumulatively have the prejudicial effect for which judgment was reversed in *Delzell* v. *Day*, 36 Cal.2d 349, 351 [223 P.2d 625], a case in which objection was not made to the conduct of the judge.

 Appellant contends that it was reversible error for the trial judge to fail to make a declaration with respect to the relief sought by appellant's cross-complaint. Appellant's answer set up affirmative defenses of an employment relationship, that neither Carol Crooks nor his estate were an "insured" under the policy, that the policy does not cover employers for which the insured is obligated under the Workmen's Compensation Law and that the employer here was so obligated. The cross-complaint again alleges the employment relationship and the applicability of the workmen's compensation laws, and then alleges that a controversy exists as to coverage for Carol Crooks or his estate and asks a declaration that neither said estate nor Carol Crooks is an insured within the terms of the policy and that cross-complainant is not liable for the judgment recovered against said estate. The complaint likewise contains a second cause of action for declaratory relief, seeking a declaration that coverage under the policy extends to Carol Crooks and/or the administratrix of the estate of Carol Crooks.

It is very clear that the issue raised by the cross-complaint and by the affirmative defenses in the answer are the same. The trial judge expressed the belief that the cross-complaint was really a special defense comprehended in the complaint and answer, and that the jury had only to determine the status as employment or otherwise. Counsel for appellant made no objection, and did not ask for a ruling. The trial judge may, under section 1061, Code of Civil Procedure, refuse to declare the rights and liabilities of the parties if such declaration is not necessary or proper under the circumstances. (*Citizens' etc. Pensions* v. *Board of Supervisors of Los Angeles County*, 91 Cal.App.2d 658 [205 P.2d 761] ; *Silver* v. *Sheman-*

*ski*, 89 Cal.App.2d 520, 551 [201 P.2d 418].) It was noted in *Kessloff* v. *Pearson*, 37 Cal.2d 609, 613 [233 P.2d 899], that where a complaint is incorrectly entitled an action for declaratory relief, if a cause of action is stated, it should not be dismissed, and if it appear that it has been entitled a declaratory relief action "for the sole purpose of obtaining a preference on the calendar, the court has the power to prevent the accomplishment of that purpose by appropriate order or procedure." As the cross-complaint was a mere repetition of the affirmative defenses, the instant case is distinguishable from those in which the courts have held a failure to make a declaration or finding to be reversible error. (*Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 576 [177 P.2d 4, 172 A.L.R. 1107]; *Krum* v. *Malloy*, 22 Cal.2d 132, 136 [137 P.2d 18]; *James* v. *Haley*, 212 Cal. 142, 146 [297 P. 920]; *Gilmore* v. *Gilmore*, 99 Cal.App.2d 186, 187 [221 P.2d 123]; *Clements* v. *Lanning*, 89 Cal.App.2d 817, 819-820 [202 P.2d 98].)

█ It is appellant's final contention that error was committed in the giving and refusal of certain instructions. Complaint is first made of the instructions given defining joint venture. Appellant contends that they were inapplicable under the pleadings, the evidence and the law, and that they injected an alien doctrine into the case. While it is true that in the pleadings the issue raised was only whether the Crooks brothers were employees or independent contractors, plaintiffs' counsel raised the issue of joint venture in his opening statement without objection. No objection was made at the trial to any testimony concerning joint venture on the ground that it was outside the issues. In *Shook* v. *Beals*, 96 Cal.App.2d 963, 967 [217 P.2d 56, 18 A.L.R.2d 919], it was held that joint venture instructions were proper where the case was tried on that theory without objection even though the issue had not been raised by the pleadings.

█ In another instruction the trial judge referred to the defendant as "the so-called insurance company" instead of "defendant, Glens Falls Indemnity Company" as appellant had stated in the instruction offered. Appellant says that this was partisan advocacy, that it violated fair play, castigated defendant and was devastating to its case. A few lines subsequent to this the jury was instructed at defendant's request that the defendant was engaged in a lawful business, and in considering plaintiff's claims, they were to bear in mind that an insurance company is entitled "to the same consideration as any independent engaged in any other form

of business." We do not think the rather unusual use of the word "so-called" by the trial judge had any prejudicial effect. For he used that word at the trial twice in rather unusual contexts, once in describing an exhibit of plaintiffs as the "so-called photostatic copy" of the insurance policy and again to describe the "so-called special defense set out in the form of a cross-complaint." Both of the references were made in the presence of the jury, and in neither case did he appear to be using the word in a derogatory sense.

Appellant argues that the instruction was erroneous which defined "employee" as "one who is subject to the absolute control and direction of his employer in regard to any act, labor or work to be done in the course and scope of his employment." It is contended that the test is not whether the employer actually *exercises* control but whether he has the *right* of control. There appears to be no error in the instruction. An employee is *subject* to control as stated in the instruction when the employer has the right to control, whether or not such control is being exercised at the moment.

Appellant offered an instruction which stated that the policy here involved did not insure any employee of the Browns for the injury or death of another employee of such employer arising out of an accident in the course of the employment involving the use of an automobile in the business of the employer. The proposed instruction then continued "Therefore, unless you find by a preponderance of the evidence that, at the time of the accident, neither Carol W. Crooks, the driver of the truck of Arthur J. Brown, nor Raymond Earl Crooks, the plaintiffs' decedent, was an employee of Arthur J. Brown, then I instruct you, unless you so find by a preponderance of the evidence, your verdict must be in favor of the defendant."

The last paragraph was modified to read:

"Therefore, if you find by a preponderance of the evidence that, at the time of the accident, Carol W. Crooks, the driver of the truck of Arthur J. Brown, and Raymond Earl Crooks, plaintiffs' decedent, was an employee of Arthur J. Brown, your verdict must be in favor of the defendant."

Appellant maintains that the trial court in modifying the last paragraph of the instruction placed the burden on defendant to prove that the Crooks brothers were employees of Brown, requiring a preponderance of such evidence to establish such fact as a condition of rendering a

defendant's verdict. The instruction, it is alleged, ignored plaintiff's burden on this issue; especially in the event that the jury should find the evidence evenly balanced. The modification of the instruction does not go so far as to tell the jury that defendant must establish by a preponderance of the evidence that the Crooks brothers were employees. It is correct as far as it goes. But it is incomplete in that it does not also state that if the evidence is evenly balanced they must find for defendant.

A later instruction, however, told the jury that plaintiffs must prove by a preponderance of the evidence that the Crooks brothers were independent contractors and not employees, and that if the evidence does not preponderate in favor of such contention, the verdict must be for defendant. There was also an instruction that in the absence of contrary evidence, a person performing work and labor for another is presumed to be an employee. The jury was also told that the burden of proof was on plaintiffs to prove their case by a preponderance of the evidence, and "preponderance" was then properly defined. The instruction as offered by appellant was preferable to the instruction as modified, but when the instructions are read as a whole, it does not appear that the jury could have been misled as to the burden of proof.

■ Finally, it is contended that error was committed in refusing to give an instruction in accordance with section 3360, Labor Code, stating that "workmen associating themselves under a partnership agreement, the principal purpose of which is the performance of the labor on a particular piece of work are employees of the person having such work executed." The instruction is not applicable to the facts in this case, since there is no evidence that the brothers formed a partnership with the principal purpose of executing this work for Brown. The partnership between the brothers antedated the arrangement with Brown, as is shown by the testimony of the tax accountant who prepared their partnership returns for 1948, as well as by the testimony of Earl's wife. Therefore there was no error in refusing the instruction.

In view of the foregoing we conclude that there is no prejudicial error in the record.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.